UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

XIWEN DUAN,

                Plaintiff,

           v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

                Defendant.

**MEMORANDUM & ORDER**
22-CV-01538 (HG)

**HECTOR GONZALEZ**, United States District Judge:

    Plaintiff commenced this lawsuit because she applied for asylum, on behalf of herself and her son, approximately two-and-a-half years ago but has not received a decision on those applications or even an interview to assess the applications. ECF No. 1. Defendant has moved to dismiss Plaintiff's complaint, arguing both that the Court lacks subject matter jurisdiction over her claims and, alternatively, that Plaintiff fails to state a claim. ECF No. 24. For the reasons set forth below, the Court finds that it has subject matter jurisdiction but dismisses Plaintiff's complaint in full, without leave to amend, for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**PROCEDURAL BACKGROUND**

    Plaintiff applied to Defendant for asylum on January 12, 2021, and submitted an application on her son's behalf at the same time. ECF No. 1 at 5. After not receiving decisions on either application, she filed this lawsuit on March 16, 2022, and her applications have now been pending for approximately two-and-a-half years. *Id.* Plaintiff has asked the Court to "provide . . . mandamus of the case to USCIS." *Id.* at 6. The Court interprets Plaintiff's statement as a request for relief pursuant to 28 U.S.C. § 1361, which provides that "[t]he district

courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Additionally, in deference to Plaintiff's *pro se* status, even though her complaint does not reference the Administrative Procedure Act ("APA"), the Court interprets Plaintiff's complaint as also asserting a claim pursuant to 5 U.S.C. § 706(1), which authorizes district courts to "compel agency action unlawfully withheld or unreasonably delayed."

Defendant has moved to dismiss Plaintiff's complaint, asserting both that the Court lacks jurisdiction to grant Plaintiff the relief she seeks and also that Plaintiff fails to state a claim even if the Court has jurisdiction. ECF No. 26. In that motion, Defendant explains that it adjudicates asylum applications on a last-in-first-out ("LIFO") basis in order to deter frivolous applications by denying them quickly since asylum seekers whose applications have been pending for more than 180 days are permitted to receive work authorization in the United States while their application is pending. *See id.* at 9–10.[1] Defendant acknowledges that using the LIFO method causes asylum seekers with older applications to wait longer for a decision, but Defendant represents that it is taking other measures to improve the speed at which it decides asylum applications, such as hiring additional personnel and establishing a new office "to centralize case intake." *Id.* at 12. Defendant also makes available an administrative process through which

---

[1] Defendant explains that it historically adjudicated asylum applications on a LIFO basis and resumed doing so in 2018, after temporarily adjudicating applications on a first-in-first-out ("FIFO") basis between 2014 and 2018. *See* ECF No. 26 at 9–10 (citing *USCIS to Take Action to Address Asylum Backlog*, U.S. CITIZENSHIP & IMMIGRATION SERVS. (last visited July 22, 2023), https://perma.cc/85WE-WEN2). Defendant claims that the temporary adoption of the FIFO adjudication method "immediately resulted in a dramatic increase in receipts, presumably to obtain employment authorization." ECF No. 26 at 9.

2

asylum seekers can request to expedite their application. *Id.* at 13.² Defendant asserts that Plaintiff has not submitted such a request, *see id.*, and neither Plaintiff's complaint nor any other submission she has filed in this case has asserted that she has done so, *see* ECF Nos. 1, 14, 20.

Plaintiff was initially responsive to various orders from the Court earlier in this case. *See* ECF Nos. 14, 20. However, she did not respond to Defendant's motion to dismiss, and the deadline of November 16, 2022, that the Court set for her to respond passed long ago. *See* ECF No. 23.

## LEGAL STANDARD

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).³ "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. However, a *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court's obligation "to construe a *pro se* complaint liberally" continues to apply "[e]ven after *Twombly*" established the plausibility standard for assessing pleadings. *Newsome v. Bogan*, 795 F. App'x 72, 72 (2d Cir. 2020).

---

²     *See also How to Make an Expedite Request*, U.S. Citizenship & Immigration Servs. (last visited July 22, 2023), https://perma.cc/AF6Z-EUAD.

³     Unless noted, case law quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

3

On a motion to dismiss, "[d]istrict [c]ourts may take judicial notice of facts 'not subject to reasonable dispute' when they 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Kravitz v. Tavlarios*, No. 20-2579-cv, 2021 WL 5365582, at *3 (2d Cir. Nov. 18, 2021) (quoting Fed. R. Evid. 201(b)(2)) (affirming dismissal of complaint and propriety of district court taking judicial notice of certain documents). The Court's ability to take judicial notice of documents extends to "documents from official government websites." *Rynasko v. N.Y. Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023).

By applying these criteria, the Court takes judicial notice of the facts that Defendant adjudicates asylum applications on a LIFO basis and makes available a process through which asylum seekers can request to expedite their applications. Both of these facts are related to the asylum process, as described on government websites, and are not subject to reasonable dispute.[4] Nor has Plaintiff attempted to dispute them. However, the Court does not assign any weight in this decision to Defendant's assertion that Defendant is making purported improvements to the asylum process, such as hiring additional personnel and centralizing the processing of applications, because these assertions are not readily verifiable. *See Xu v. Cissna*, 434 F. Supp. 3d 43, 50 n.3 (S.D.N.Y. 2020) (declining, in case challenging delayed adjudication of asylum application, to take judicial notice of "background information on relevant statutes and regulations, and on the processing of asylum applications" provided in declaration by USCIS employee).

---

[4]   See *USCIS to Take Action to Address Asylum Backlog*, U.S. CITIZENSHIP & IMMIGRATION SERVS. (last visited July 22, 2023), https://perma.cc/85WE-WEN2; *How to Make an Expedite Request*, U.S. CITIZENSHIP & IMMIGRATION SERVS. (last visited July 22, 2023), https://perma.cc/AF6Z-EUAD.

## **DISCUSSION**

### I. The Court Has Subject Matter Jurisdiction to Decide Plaintiff's Claims

As a threshold issue, the Court determines that it has subject matter jurisdiction to address both Plaintiff's mandamus claim and her implicit claim for undue delay pursuant to the APA. The asylum process is governed in part by 8 U.S.C. § 1158, which says that "in the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed." 8 U.S.C. § 1158(d)(5)(A)(ii). Once that interview has taken place, the statute provides, once again "in the absence of exceptional circumstances," that "final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." 8 U.S.C. § 1158(d)(5)(A)(iii). However, that same subsection of the statute contains a provision entitled "[n]o private right of action," which says that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." 8 U.S.C. § 1158(d)(7).

Although the provision of the asylum statute that disclaims any private right of action may appear at first glance to be a jurisdiction-stripping provision, its language is not as strong as another provision of the same statute, which clearly does strip the federal courts' jurisdiction to address other issues. That separate provision expressly says that "[n]o court shall have jurisdiction to review" various asylum-related decisions by the Attorney General, such as decisions to remove an asylum applicant to another country to apply for asylum there, to excuse an asylum applicant from the one-year deadline that applies to submitting an asylum application, and to excuse an asylum applicant from the typical prohibition against submitting a second asylum application. 8 U.S.C. § 1158(a)(3). This jurisdiction-stripping provision refers only to

5

these determinations made by the Attorney General under subsection (a) of the asylum statute and not to the target deadlines by which Defendant intends to adjudicate asylum applications under subsection (d).  *See id.*

When reading the "[n]o private right of action" provision in 8 U.S.C. § 1158(d)(7) in contrast with the express jurisdiction-stripping provision in 8 U.S.C. § 1158(a)(3), it becomes clear that Congress knew how to write an unambiguous jurisdiction-stripping provision.  By contrast, the former provision appears to have been designed only to preclude asylum applicants from bringing lawsuits to enforce the specific 45-day deadline for receiving an interview and the 180-day deadline for receiving a decision.  The Court joins the multiple courts in the Second Circuit that have reached this interpretation and, therefore, held that 8 U.S.C. § 1158(d)(7) does not strip the federal courts' jurisdiction to decide mandamus or APA claims based on assertions that asylum applications have remained pending long after those statutory deadlines.  *Hu v. Sessions*, No. 18-cv-2248, 2020 WL 7486681, at *2 (E.D.N.Y. Dec. 17, 2020); *Liu v. Wolf*, No. 19-cv-410, 2020 WL 2836426, at *6 (S.D.N.Y. May 30, 2020); *De Oliveira v. Barr*, No. 19-cv-1508, 2020 WL 1941231, at *2–3 (E.D.N.Y. Apr. 22, 2020); *Ruan v. Wolf*, No. 19-cv-4063, 2020 WL 639127, at *4 (E.D.N.Y. Feb. 11, 2020); *Xu*, 434 F. Supp. 3d at 52.  In other words, asylum applicants may not compel compliance with these statutory deadlines, but they may still file lawsuits in federal court asserting that prolonged delays in their asylum applications have become unreasonable.

## II.  Plaintiff's Claims Fail on the Merits

Even though the Court has subject matter jurisdiction to consider Plaintiff's mandamus claim, her mandamus claim fails on the merits.  "Mandamus may be awarded only if the plaintiff proves that (1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy

available." *Benzman v. Whitman*, 523 F.3d 119, 132–33 (2d Cir. 2008) (affirming dismissal of plaintiffs' mandamus claim because it "duplicate[d] the APA count" in plaintiffs' complaint); *see also De Oliveira*, 2020 WL 1941231, at *4 (applying same three-part mandamus test articulated in *Benzman* to plaintiffs' allegations that decisions on asylum applications were unduly delayed); *Liu*, 2020 WL 2836426, at *10 (same). The Court need not even consider whether Plaintiff has satisfied the first two requirements because the availability of a cause of action under 5 U.S.C. § 706(1), authorizing a court to "compel agency action unlawfully withheld or unreasonably delayed," means that Plaintiff has an adequate alternative remedy under the APA. *Liu*, 2020 WL 2836426, at *10 (holding that "mandamus relief [wa]s not available" because "an alternative adequate remedy [was] possible under the APA"). This is true even though, as further explained below, Plaintiff's APA claim also fails on the merits. *Id.* (dismissing both APA and mandamus claims).

To assess whether Plaintiff has a claim under the APA, the Court will consider the factors described in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984), which the Second Circuit has said "set[s] forth [a] test for determining if agency action is unreasonably delayed." *Nat. Res. Defense Counc., Inc. v. FDA*, 710 F.3d 71, 84 (2d Cir. 2013). Courts within the Second Circuit, referring to these as the "*TRAC* factors," have used them in the specific context of assessing whether Defendant has delayed too long in deciding an asylum application. *See, e.g.*, *De Oliveira*, 2020 WL 1941231, at *4; *Xu*, 434 F. Supp. 3d at 51. The applicable factors are:

> (i) the time agencies take to make decisions must be governed by a rule of reason; (ii) where Congress has provided a timetable, it may supply content for this rule of reason; (iii) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (iv) the effect of expediting delayed action on agency activities of a higher or

7

> competing priority; (v) the nature and extent of the interests prejudiced by delay; and (vi) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Xu*, 434 F. Supp. 3d at 51. A party may prevail even without demonstrating that all of these factors weigh in that party's favor. For example, "a court may refuse to grant relief, even though all the other factors considered in *TRAC* favor it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Zhang v. Wolf*, No. 19-cv-5370, 2020 WL 5878255, at *6 (E.D.N.Y. Sept. 30, 2020) (declining to compel decision on asylum application).

The relevant factors weigh against granting Plaintiff any relief under the APA. Multiple courts within the Second Circuit have held that Defendant's decision to adjudicate asylum applications on a LIFO basis, in order to deter fraud and abuse by quickly disposing of unmeritorious applications, is an appropriate "rule of reason." *Zhang*, 2020 WL 5878255, at *4; *Liu*, 2020 WL 2836426, at *8; *Chen v. Wolf*, No. 19-cv-9951, 2020 WL 6825681, at *5 (S.D.N.Y. Nov. 20, 2020). Plaintiff's complaint has not alleged any other potential cause for the delayed decision on Plaintiff's application, *see* ECF No. 1, so the Court declines to infer any impropriety associated with the delay. Although Defendant has far exceeded the statutory timetable for granting Plaintiff an interview within 45 days and deciding her application within 180 days, that timetable is "not mandatory" in light of Congress's decision expressly to preclude applicants from bringing a private right of action to enforce it, and the Court therefore "does not ascribe much significance to this timetable." *Xu*, 434 F. Supp. 3d at 53. In fact, courts within the Second Circuit have declined to compel decisions on asylum applications that have been pending far longer than the approximately two-and-a-half years that Plaintiff has been waiting. *Hu*, 2020 WL 7486681, at *1 (declining to compel decision on asylum application that had been

pending for five years and dismissing complaint); *Liu*, 2020 WL 2836426, at *1 (declining to compel decisions on asylum applications that had been pending for more than four-and-a-half years and dismissing complaint); *Xu*, 434 F. Supp. 3d at 48 (declining to compel decision on asylum application that had been pending for four years and dismissing complaint).

Plaintiff has not explained how the delay has impacted her, but the Court can infer that the uncertainty surrounding Plaintiff's ultimate immigration status can reasonably cause anxiety and stress. However, multiple courts have held that these pressures are insufficient to rise to the level of the "human health and welfare" concerns that justify ordering Defendant to adjudicate an application. *Hu*, 2020 WL 7486681, at *3 (declining to grant relief because "the mental and emotional toll of seeking asylum is not unique to [p]laintiff" but was instead shared by all asylum seekers with pending applications); *De Oliveira*, 2020 WL 1941231, at *5 (declining to grant relief because "angst in the pursuit of asylum is hardly unique to this batch of applicants").

Finally, ordering Defendant to adjudicate Plaintiff's application would result in Defendant simply prioritizing Plaintiff's application over other applicants, who may have been waiting even longer for a decision and are at least "equally deserving of prompt adjudication," thereby producing "no net gain" for the asylum system overall. *Xu*, 434 F. Supp. 3d at 54–55. Multiple courts have held that granting relief is improper under such circumstances. *Id.*; *Yang v. Houghton*, No. 21-cv-5485, 2021 WL 5879033, at *1 (E.D.N.Y. Dec. 13, 2021) (declining to compel adjudication of asylum application because "it just wouldn't be fair to applicants who have been waiting longer than a plaintiff just because the plaintiff has chosen to sue"); *Gong v. Duke*, 282 F. Supp. 3d 566, 569 (E.D.N.Y. 2017) (declining to compel adjudication of asylum application because "the only difference between" plaintiff and other applicants was "that plaintiff has brought a federal lawsuit").

9

**CONCLUSION**

For the reasons set forth above, the Court hereby GRANTS Defendant's motion to dismiss and dismisses Plaintiff's complaint in full. *See* ECF No. 24. Although the dismissal is with prejudice, in the sense that the Court is not permitting Plaintiff to amend her complaint to make another attempt to assert her claims, this decision does not preclude Plaintiff from bringing a new lawsuit in the future, pursuant to the APA, if Defendant continues to delay in adjudicating her application to a point that the delay eventually becomes unreasonable.

The Clerk of Court is respectfully directed to enter judgment, to close this case, and to mail a copy of this order and the forthcoming judgment to the *pro se* Plaintiff. The Clerk of Court shall also send Plaintiff copies of the unpublished decisions referenced in this order in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

SO ORDERED.

                                                              */s/ Hector Gonzalez*
                                                              HECTOR GONZALEZ
                                                              United States District Judge

Dated: Brooklyn, New York
         July 22, 2023